Ron W. Rood v. Commissioner.
Ron W. Rood v. Commissioner
Docket No. 18990.
United States Tax Court
1949 Tax Ct. Memo LEXIS 168; 8 T.C.M. (CCH) 531; T.C.M. (RIA) 49123; June 1, 1949
*168 Robert Ash, Esq., Munsey Bldg., Washington, D.C., and Carl F. Bauersfeld, Esq., for the petitioner. Bernard D. Hathcock, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax for the calendar years 1944 and 1945 in the respective amounts of $19,644.73 and $15,567.56. The sole contested issue is whether petitioner and his wife were carrying on business as partners during the taxable years 1944 and 1945, recognizable as such for tax purposes. Findings of Fact Petitioner, a resident of Orlando, Florida, since 1926, filed his tax returns for the years herein involved with the collector at Jacksonville, Florida. He married Frances Harris Rood on June 17, 1939, having known her for ten years prior thereto. Upon his arrival in Orlando in 1926, petitioner engaged in the real estate business for a short time, and thereafter became the owner of a neighborhood drugstore. In 1936, while continuing to operate the drugstore, he commenced the business of operating automatic phonographs in Orlando. The business was operated under the name of Southern Music Company, and its first location was in the rear of *169 the drugstore. Throughout the years, this business expanded and, in addition to the handling of automatic phonographs, there were also included pinball machines, weighing scales, and other similar automatic coin machines. The manner in which the business was operated was by the placement of these machines in strategtic locations for public patronage. Collections were made from the machines generally every two weeks, and the income from each machine was divided with the location owner. Petitioner operated this business in his individual capacity until July, 1943, when he made a gift of a 30 per cent interest therein to his wife, Frances. He retained a 70 per cent interest. Although there was no written partnership agreement, it was the intention of petitioner and his wife that thereafter the business was to be conducted as a partnership on a 70 per cent, 30 per cent basis. One of the reasons for the formation of the partnership was that Frances had been working in the business since it was formed in 1936, and had drawn no salary whatsoever. She felt that she was entitled to an interest in the business and approached petitioner with the idea of forming a partnership, to which he *170 was agreeable. For many years prior to 1943, and even prior to their marriage, petitioner's wife assisted him in the business at night, doing much of the clerical work entailed in its operations. She had been graduated from high school and had taken some advanced business courses in bookkeeping, typing, and shorthand. For many years she had been employed in the district office of the Equitable Life Assurance Society in Orlando as a stenographer and secretary, also performing some service work on insurance policies. In May, 1942, she terminated her employment with the insurance company in order to devote full time to the music company. At that time, the possibility of petitioner's induction into the Army was imminent, and it was their desire that while he was in the Army she should manage the business. She was familiar with the nature and operation of the business in all its vital phases. Moreover, at that time, the business was growing rapidly, its operations having been extended to cover six counties in Florida, and there was need for extra office help. In general, petitioner's wife was in charge of the office work of the company. Her tasks included the maintenance of the location *171 record book, the investigation of any substantial fluctuation in the income from machines and locations, custody and control of all the funds of the business, the making of bank deposits and withdrawal of funds, the hiring of office employees, the checking in of route men and collectors, and the preparation of summary sheets. She generally worked seven days a week, many times more than twelve hours per day. The keeping of the location record book and the interpretation of its contents daily were important tasks related to the Music Company business. These were performed by petitioner's wife and, on the basis of the recorded data, she undertook the formulation of some of the basic policies of the business. She also was in complete charge of the business whenever petitioner was absent. Petitioner devoted himself to the procurement of locations for the placement of the amusement devices, the supervision of the maintenance and shop work, and the handling of outside selling. At the time of the gift of the interest in the Music Company by petitioner to his wife, a capital account was opened in her name on the books of the company, crediting her with a 30 per cent interest in the business. *172 The capital of the business at that time had grown to about $100,000. The books of the partnership were maintained on the basis of a fiscal year ending June 30. They reflected that at the end of each of the fiscal years there was credited to the wife's account 30 per cent of the net income of the business. The only withdrawals charged against these credits were for amounts necessary to pay her Federal income taxes. Withdrawals for purposes of living expenses were charged to petitioner's drawing account. Both petitioner and his wife sought to limit the withdrawals from the business as much as possible, as it was their desire to accumulate additional capital with which to purchase new equipment when it became available after the war. At the time of the formation of the partnership, notification was given to the bank, to the Florida Industrial Commission, and to the Bureau of Internal Revenue for social security purposes; and it was otherwise held out by petitioner and his wife as a partnership. Although there was no appreciable increase in the duties performed by the wife after the formation of the partnership, she participated in all important business decisions, such as those relating *173 to investment of the capital of the business and the purchase of equipment. The title to the building which housed the offices of the Music Company and its repair shop was in the names of both petitioner and his wife. It was purchased with funds derived from the business operations. For the fiscal year ended June 30, 1944, the Southern Music Company reported taxable distributive income in the total amount of $99,506.27, of which $69,654.39 was allocated to petitioner and $29,851.88 to his wife. Similarly, for the fiscal year ended June 30, 1945, the company reported taxable distributive income in the total amount of $81,013.85, of which $56,709.70 was allocated to petitioner and $24,304.15 to his wife. The petitioner, for the fiscal year 1944, withdrew from the partnership $49,235.01. From this he paid income tax of $41,481.61, which left personal withdrawals amounting to $7,753.40. This amount was used by petitioner for living expenses. For the fiscal year 1945, petitioner withdrew $50,634.46. From this he paid income tax of $41,536.40, which left personal withdrawals amounting to $9,098.06. This amount was used by petitioner for living expenses. It included petitioner's insurance *174 premiums and, for the fiscal year 1945, included a cemetery lot and funeral expenses for petitioner's father. For the years 1944 and 1945 respondent allowed petitioner a deduction of $6,000 per year as salary for services rendered by his wife. In the fall of 1942, Frances persuaded petitioner to open a restaurant known as The Grill in downtown Orlando. Capital for this undertaking was derived from the earnings of the Music Company, and it was considered and treated as part of the latter's activities. The income of The Grill was included in the Music Company's return of income for the fiscal year ended June 30, 1944. Petitioner's wife was in general charge of the restaurant, having undertaken most of the arrangements for its establishment. She contracted with suppliers for the purchase of merchandise, attended to OPA and rationing matters, handled all of the money, and made the bank deposits, and, in general, supervised the personnel and the operation. When the restaurant was first opened, it operated on two 8-hour shifts; thereafter it remained open 24 hours per day. There were as many as 60 persons employed in the restaurant venture at one time. In June, 1944, petitioner and *175 his wife entered into partnership with Earl Pearce, an experienced Orlando restaurateur, for the operation of The Grill. Pearce's interest in the partnership was to be 50 per cent, petitioner's interest 35 per cent, and his wife's interest 15 per cent. Pearce was to purchase his interest out of his part of the income of the business. This partnership existed until August, 1945, when it was dissolved by an instrument entitled "Bill of Sale Absolute." By this instrument, Pearce tarnsferred his interest to "Ron W. Rood and Frances H. Rood, co-partners doing business as Southern Music Company * * *." Within a few days thereafter, The Grill was closed upon a decision of Mrs. Rood, as she discovered that it was losing money due to dishonesty of employees. Sometime in November, 1944, petitioner's wife conceived of the idea of the establishment of a retail music store in a good location in Orlando. At that time, steps were undertaken by petitioner and his wife, as partners in the Southern Music Company, for the opening of such a business. A store was rented with the view to commencement of business as soon as fixtures and merchandise could be obtained. Arrangements were made with various *176 suppliers to send merchandise to the Southern Music Company on open account. In the spring of 1946, such a store was opened by Southern Music Company, and it has since been in successful operation. In the statement attached to the notice of deficiency, respondent determined as to the year 1944: "It has been determined that the partnership of Southern Music Company is not recognized for income tax purposes, and income from this partnership reported on the return of Frances Rood has been included as taxable to Ron W. Rood." As to the year 1945, he determined: "It has been determined that the partnership of Southern Music Company and the partnership of Pearces Grill are not recognized for income tax purposes, and the total income of said partnerships has been included as taxable income to Ron W. Rood, less allowance for compensation to Frances Rood of $6,000.00." Petitioner's wife substantially contributed to the control and management of the business, and otherwise performed vital and essential additional services. Petitioner and his wife really and truly intended to, and did, engage in business as partners during the years 1944 and 1945. Opinion KERN, Judge: This is *177 another family partnership case. Petitioner urges that a partnership was intended and established between him and his wife, and that it should be recognized in the years before us for tax purposes, because his wife substantially contributed to the control and management of the enterprises, and otherwise performed additional vital services. . A thorough and careful consideration of all of the evidence presented convinces us that petitioner's view must prevail. ; . What we said in , is equally applicable here: "In prior cases a wife's services, no more extensive or vital to business than those here proved * * * have been held sufficient to warrant recognition of an alleged partnership for tax purposes, ; ; ; . And such services rendered in years preceding a formal partnership agreement have been considered relevant *178 as support for the decision reached, ; ; . * * *" * * *
We do not believe that the result should be otherwise merely because no formal written partnership agreement existed. The absence of a written agreement is not fatal, where, as here, the agreement can be gleaned with some certainty and clarity from the mutual understanding of the parties. See, on this point, ; cf. . Decision will be entered under Rule 50.